IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 2, 2025

IN RE MAGNUS H.[1] ET AL.

**Appeal from the Juvenile Court for Knox County**
**No. 47JC1-2025-JT-23      Timothy E. Irwin, Judge**

_____

**No. E2025-01163-COA-R3-PT**
_____

The trial court terminated a father's parental rights to his five minor children after finding clear and convincing evidence that the father, who was incarcerated when the termination petition was filed, abandoned the children by wanton disregard; the children were victims of severe abuse; the father was confined under a criminal sentence of six years; and termination of the father's parental rights was in the best interests of the children. The father appeals. Upon diligent review of the record, we find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Mary L. Ward, Knoxville, Tennessee, for the appellant, Matthew H.

Jonathan Skrmetti, Attorney General and Reporter, and Kathryn A. Ahillen, Deputy Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**BACKGROUND**

Magnus H., Maceo H., Mimir H., Mykel H., and Mara H. (together, the "Children") are the minor children of Brittany H. ("Mother") and Matthew H. ("Father").[2] The family

_____

[1] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights to protect their privacy and identities.

[2] Mother's parental rights were terminated in a separate order from which she did not appeal. Mother is mentioned only as necessary for context.

became involved with Tennessee Department of Children's Services ("DCS" or the "Department") in July of 2024 after DCS received a referral alleging that there were two adults and four children[3] sleeping in a vehicle, that the vehicle was "filthy with trash," that the children were dirty and dressed only in dirty diapers, and that the oldest child[4] did not have a car seat. On July 10, 2024, DCS filed a petition in the Knox County Juvenile Court (the "trial court") to adjudicate all the Children except Mara dependent and neglected and for temporary legal custody of them. DCS averred that the case manager to whom the referral had been assigned contacted the family and observed the Children to be "filthy" and to have cuts and bruises.

The petition further states that the case manager requested to visit the family's home and that Mother gave her two different addresses, one of which was an apartment where the paternal grandmother ("Grandmother") lived. The case manager and the family traveled together to Grandmother's apartment. During this visit, Grandmother confessed to the case manager that the family stayed with her sometimes but did not live with her, that she was concerned for the Children, and that the parents "are not clean people." The petition further avers that after the case manager confronted the parents about this, they told her that their belongings were located at the other address they had provided to her but that they had been evicted from that apartment days earlier. An employee of the leasing office for that apartment purportedly told the case manager that the family was "absolutely" still living at the apartment, that the parents seemed "high all the time[,]" and that there was video footage of the parents and two of the children—neither of whom were wearing shoes—dumpster diving in a construction zone on the property between 11:00 pm and 3:00 am. The employee allegedly stated that the dumpster diving occurred more than once, that the complex also had video footage of a man believed to be Father "climbing the building and getting into the electrical box[,]" and that there had been numerous complaints about the Children, other than Mara, "running around naked." The employee confirmed that the family had been served with an eviction notice a few days earlier. Finally, the petition alleged that the parents submitted to drug screens, that Mother tested positive for methamphetamines and suboxone, and that Father tested positive for methamphetamines.

On August 29, 2024, the Department filed an amended petition adding allegations of severe abuse and environmental neglect. The amended petition averred that drug screens of all the Children other than Mara were performed on July 10, 2024, that they all tested positive for amphetamine and methamphetamine, and that Magnus was taken to the hospital that day "due to having maggots in his hair." DCS also alleged that the case manager visited the family's apartment on July 11, 2024 and the case manager

---

[3] Mara is the youngest child and was not yet born at the time of this referral.

[4] Magnus is the oldest child and was six years old at the time.

observed that the living room was cluttered waist-deep with tires/wheels, garbage, feces, clothes, and other items. The wheels had the same color rims as the rims on the family's vehicle. Upstairs, [the case manager] observed more garbage and clothes in the floor and observed the Mother and Father's bedroom. The Mother reported that she, the father, and all the children would all sleep in that bed. [The case manager] observed a can of Mike's hard lemonade and hundreds of flies on the wall of the bedroom. The bathroom also had garbage on the floor, and the sink was clogged and filled with water. [The case manager] observed the children's bedroom, which had a bunkbed frame with no mattresses. [The case manager] observed animal feces and a dog in the children's bedroom. [The case manager] and the Mother went back downstairs, and [the case manager] noticed an infestation of roaches on the wall and more flies on the ceiling. [The case manager] climbed over the garbage in the living room to get to the kitchen and observed more garbage and other items in the kitchen. The floor was not visible in the kitchen or in the living room.

On February 14, 2025, the Department filed a petition in the trial court seeking to terminate Father's parental rights. The petition avers that the trial court entered an emergency protective custody order placing all the Children, except Mara, in the Department's custody on July 9, 2024, and entered an emergency protective custody order placing Mara in the Department's custody on September 17, 2024. The Children have been in foster care continuously since that time. The termination petition alleged grounds of abandonment by wanton disregard, severe child abuse, and failure to manifest an ability and willingness to assume custody. The trial court heard the termination petition on June 11, 2025. The Children's foster mother ("Foster Mother") and Father testified at the trial. At the outset of the trial, the Department announced that it was voluntarily dismissing the ground of failure to manifest an ability and willingness to assume custody.

The trial court admitted as evidence an order entered on February 21, 2025, wherein the trial court found by clear and convincing evidence that the Children were victims of severe child abuse and that the Children were dependent and neglected due to the parents' "substance abuse, environmental neglect, homelessness, and inability to provide appropriate care and supervision[.]" Specifically, the trial court found in the severe abuse order that Mother used methamphetamine with Father when she knew she was pregnant with Mara, that Father failed to protect Mara from Mother's drug use, and that the parents exposed the rest of the Children to illegal substances, which the Children, other than Mara, tested positive for on a drug screen. The trial court also found that the condition of the family's home was "deplorable[,]" going so far as to note it was the worst the trial court had ever seen and was "specific brutality that the [trial court] finds to be reasonably expected to produce severe impairment of the [Children's] ability to function in the [] environment." The trial court also admitted as evidence judgments entered by the Knox County Criminal Court on March 14, 2025, which showed that Father pled guilty to four

counts of attempted negligent drug exposure of a child under eight years of age. These convictions arose from Father's exposure of the Children to illegal substances. Father was sentenced to six years for each of the counts, with the sentences running concurrently and Father to serve one year incarcerated before being placed on supervised probation. Father did not appeal the severe abuse order or the Criminal Court judgments. Following the admission of the Criminal Court judgments, the Department asked the trial court to amend the grounds pled to include the ground of a six-year sentence.

Foster Mother testified that the Children were doing well in school, had received routine medical care while in her custody, and had been in her custody for almost a year. She further testified that her husband also loves the Children and that they are interested in adopting the Children. She explained that they have a niece and daughter-in-law that live nearby and help them with the Children as needed.

Father testified that he participated in twenty online classes while incarcerated, which focused on the following areas: "becoming a better father[,]" anger management, expectations and outcomes, exercise, career resources, behavior change, basic education, conflict resolution, contemporary technology skills, entrepreneurship, substance abuse education, skill based education, "how to use your knowledge[,]" healthy coping skills, health education, financial literacy, family and community reunification, and time management. He also testified that he was participating in a narcotics anonymous program at the jail. Father stated that he expected to be released from jail on August 28 and that three case workers were working on getting him housing. He believed that the programs he participated in during his incarceration and a forklift certificate he earned prior to his incarceration would allow him to secure employment in order to support the Children after his release. When asked why he believed it was not in the Children's best interests for his rights to be terminated, Father testified simply: "I mean, I just want to tell you that through all this, I know I did wrong. I'm not trying to fight the fact that they were severely abused, but I'm trying." On cross-examination, Father conceded that he had been charged with theft in December 2024, for which he was convicted and sentenced to time served. He also explained that in January 2025, he was arrested for vandalism stemming from a November 2024 incident but that the vandalism charge had been dismissed.

On July 21, 2025, the trial court entered an order finding clear and convincing evidence that Father abandoned the Children prior to his incarceration by demonstrating a wanton disregard for the Children's welfare; that Father was a perpetrator of severe child abuse "against four of the subject children and Mara, who is a sibling to the other subject children," that Father was sentenced to six or more years of incarceration when the Children were under eight years of age; and that it is in the Children's best interests for Father's parental rights to be terminated.

Father timely appealed.

**ISSUES**

Father raises a single issue on appeal: Whether the trial court erred by finding that terminating his parental rights was in the best interests of the Children.

Although Father does not challenge the trial court's finding of grounds for termination, we must "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525–26 (Tenn. 2016).

**STANDARD OF REVIEW**

"A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)). "Because of the profound consequences of a decision to terminate parental rights, a petitioner must prove both elements of termination by clear and convincing evidence." *In re Markus E.*, 671 S.W.3d 437, 456 (Tenn. 2023). This heightened burden "minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)).

As our Supreme Court has explained, we employ a two-step process in reviewing termination cases:

> To review trial court decisions, appellate courts use a [] two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)].

*In re Markus E.*, 671 S.W.3d at 457.

### DISCUSSION

*Grounds for termination*

I.    *Abandonment by wanton disregard*

Abandonment, as defined by Tennessee Code Annotated section 36-1-102, is a ground for termination of parental rights.  Tenn. Code Ann. § 36-1-113(g)(1) (effective July 1, 2024 to June 30, 2025).[5]  There are several ways in which abandonment may occur; as to Father, DCS proceeded under section 36-1-102(1)(A)(iv)(*c*), which provides the following:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> * * *
>
> (iv) A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, . . . and has:
>
> * * *

---

[5] In termination cases, we apply the version of the statute in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).  The termination petition in this case was filed on February 14, 2025.

- 6 -

(*c*) With knowledge of the existence of the born or unborn child, engaged in conduct prior to, during, or after incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv)(*c*) (effective July 1, 2024 to May 4, 2025).

Father was incarcerated at the time the termination petition was filed, and the trial court found that Father "engaged in conduct that exhibits a wanton disregard for the welfare of the children by incurring criminal charges after the children entered foster care." The trial court also noted that the Children, other than Mara, were removed from the parents' custody because they "were homeless and living in a vehicle." The parents tested positive for methamphetamine at the time of that removal, and the removed Children were exposed to amphetamine and methamphetamine as evidenced by hair follicle drug screens. Similarly, Mara was removed from the parents' custody "after being born at home in deplorable conditions and while there was drug use in the home."

This Court recently explained that

[i]n understanding whether wanton disregard has been established, this [C]ourt has repeatedly observed that "[a]cts amounting to wanton disregard typically 'reflect a "me first" attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child.'" *In re Melvin M.*, No. M2021-01319-COA-R3-PT, 2022 WL 17250274, at *4 (Tenn. Ct. App. Nov. 28, 2022) (quoting *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015)); *see also, e.g., In re Tinsley L.*, No. E2022-00965-COA-R3-PT, 2023 WL 6057476, at *2 (Tenn. Ct. App. Sept. 18, 2023). In reaching a determination as to wanton disregard, courts "may consider all evidence relevant to determining 'whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.'" *In re Layton W.*, No. M2021-00084-COA-R3-PT, 2021 WL 4440539, at *4 (Tenn. Ct. App. Sept. 28, 2021) (quoting *In re Audrey S.*, 182 S.W.3d at 866).

*In re Ka'Myiah M.*, No. M2024-01421-COA-R3-PT, 2025 WL 3643403, at *6 (Tenn. Ct. App. Dec. 16, 2025), *no perm. app. filed*. Additionally, we have "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at *5 (quoting *In re Audrey S.*, 182 S.W.3d at 867–68).

Father used drugs with Mother when he knew that she was pregnant with Mara, exposed the rest of the Children to such drugs, and has continued to engage in criminal behavior during the custodial period, as evidenced by his recent theft conviction. These individual acts alone demonstrate Father's wanton disregard for the welfare of the Children, and this evidence is made even stronger when taken together. Therefore, we conclude that the evidence does not preponderate against the trial court's finding, and we affirm the trial court's determination that DCS proved this ground by clear and convincing evidence.

## II. Severe abuse

Alternatively, parental rights also may be terminated when

[u]nder a prior order of a court or by the court hearing the petition to terminate parental rights or the petition for adoption, a child has been found to be a victim of severe child abuse, as defined in § 37-1-102, and the parent or guardian has been found to have knowingly or with gross negligence either committed severe child abuse or failed to protect the child from severe child abuse.

Tenn. Code Ann. § 36-1-113(g)(4). Among other things, severe abuse is defined as "[t]he ingestion of an illegal substance or a controlled substance by a child under eight (8) years of age that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]" Tenn. Code Ann. § 37-1-102(b)(27)(E) (effective January 1, 2025 to May 4, 2025). It is "well settled that a trial court may rely on a prior court order finding severe child abuse as a ground for termination and is not required to re-litigate the issue of severe abuse during the termination trial, so long as the prior order is final." *In re Maisynn Y.*, No. E2025-00486-COA-R3-PT, 2025 WL 3676234, at *7 (Tenn. Ct. App. Dec. 17, 2025), *no. perm. app. filed* (quoting *In re Neamiah R.*, No. E2017-02000-COA-R3-PT, 2018 WL 2331868, at *6 (Tenn. Ct. App. May 23, 2018)).

On February 21, 2025, the trial court entered an order finding that Mara was a victim of severe abuse due to Father's failure to protect her from Mother's drug use while pregnant with her. The trial court also found that the Children, other than Mara, were victims of severe abuse because the parents exposed them to methamphetamine, amphetamine, and "deplorable living conditions which [the trial court found] to be specific brutality, abuse, or neglect that has caused or will reasonably be expected to produce severe impairment of the children's[] ability to function adequately[.]" Neither parent appealed this severe abuse order, and it was a final order at the time of the termination trial on June 11, 2025. Accordingly, we affirm the trial court's determination that DCS proved this ground by clear and convincing evidence.

### III. Six-year sentence

A parent's rights may also be terminated when "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of one (1) or more criminal acts, under a sentence of six (6) or more years, and one (1) or more other grounds" for termination have been proven. Tenn. Code Ann. § 36-1-113(g)(6)(B). "[T]he obvious intention of the statute [is] to achieve permanency for children whose parents are subjected to the possibility of lengthy prison sentences." *In re S.D.*, No. M2015-01932-COA-R3-PT, 2018 WL 6012537, at *4 (Tenn. Ct. App. Nov. 15, 2018) (quoting *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at *7 (Tenn. Ct. App. July 21, 2014)). Consequently, while this ground "requires some period of confinement, the legislature did not expressly provide that the actual period of confinement must amount to" six or more years. *Id*. Therefore, because Father received a sentence of six years, it is of no consequence that he was only required to spend one year in confinement and allowed to serve the remainder of his sentence on supervised probation.

Although the Department did not include this ground in the termination petition, "a ground for termination not included in the petition properly can be found if the ground was tried by implied consent." *In re Eimile A.M.*, No. E2013-00742-COA-R3-PT, 2013 WL 6844096, at *5 (Tenn. Ct. App. Dec. 26, 2013) (citing *In re: Anthony R.*, No. M2012-01412-COA-R3-PT, 2013 WL 500829, at *4 n.5 (Tenn. Ct. App. Feb. 8, 2013)). For a court to find that a ground was tried by implied consent,

> it must be clear from the record that the evidence presented relevant to the unpled ground had no relevance to any other issue being presented to the [t]rial [c]ourt . . . that the parent fully understood that this particular unpled ground for termination was being tried and that the parent impliedly consented to the trial of that ground even though it had not been pled.

*Id.* (citing *In re: S.J.M.*, No. M2009-01080-COA-R3-PT, 2009 WL 4039430, at *3 (Tenn. Ct. App. Nov. 20, 2009)). The evidence of Father's six-year sentence was not relevant to any other issue being presented to the trial court. After the judgments of conviction were admitted into evidence by the trial court, the Department moved to amend its termination petition to conform to the evidence and add this ground, and the trial court granted the motion. Father and his attorney were present and did not object when the Department moved to admit the judgments into evidence and moved to amend the petition. Accordingly, we find that this ground was tried by implied consent.

"This court has 'repeatedly recognized that a court considering a petition for termination of parental rights based on Tennessee Code Annotated section 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re S.D.*, 2018 WL 6012537, at *4 (quoting *In re Hayden L.*, No. E2018-00147-COA-R3-PT, 2018 WL

4190986, at *10 (Tenn. Ct. App. Aug. 31, 2018)). The record on appeal contains copies of the judgments entered in Father's criminal cases, and these judgments reflect that Father's total effective sentence is six years. We need not look beyond the judgments of conviction in considering this ground for termination. Additionally, as set forth herein, one or more other grounds for termination have been proven. Accordingly, we affirm the trial court's determination that DCS proved this ground by clear and convincing evidence.

*Best interests*

In addition to proving at least one statutory ground for termination, petitioners in a termination case must prove, by clear and convincing evidence, that termination serves the child's best interests. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 193 (Tenn. Ct. App. 2004)). Our termination statutes recognize that "[n]ot all parental misconduct is irredeemable" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interests must be viewed from the child's, rather than the parent's, perspective."). Further, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tenn. Code Ann. § 36-1-113(i)(2).

When determining whether termination is in a child's best interests, we refer to twenty non-exclusive factors found at Tennessee Code Annotated section 36-1-113(i)(1)(A)-(T). In this case, the trial court applied the correct statutory factors and engaged in a thorough analysis in its final order:

> 22. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(A) is applicable in this matter. Thus, the Court finds it is in the best interest of the minor children for termination to be granted as to [Father], in that termination of parental rights will have a positive impact on the children's critical need for stability and continuity of placement throughout the children's minority. The Court finds the children are placed together and are doing well. The Court finds it would be unfair to have the children wait on [Father]; even if [Father] is released from jail in August of 2025, he still has not addressed the issues that lead to the severe abuse finding. The Court finds the children are loved, are thriving, and are doing great. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.
>
> 23. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(B) is applicable in this matter. Thus, the Court finds that it is in the children's best interest for termination to be granted as to [Father],

in that a change of caregivers and physical environment from the children's current placement would likely have a negative effect on the children's emotional, psychological and/or medical condition. The Court finds that a change in caregivers would devastate the children. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

24. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(C) is applicable in this matter. Thus, the Court finds that it is in the children's best interest for termination to be granted as to [Father], in that the parent has not demonstrated continuity and stability in meeting the children's basic material, educational, housing and safety needs. The Court finds that the children have not experienced any stability with [Father]. Further, the Court finds that the children were exposed to drugs, including methamphetamine and that the home environment, at the time of the removal, was one of the worst the Court had ever seen. The Court acknowledges the services completed by [Father] while in jail, but finds that [Father] has not been able to demonstrate his learning outside of a controlled environment. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

25. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(D) is not applicable in this matter and does not weigh in favor of, or against, termination. The Court finds that the children are attached to [Father]; the attachment may be less than healthy due to circumstances, but there is attachment.

26. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(E) is applicable in this matter. Thus, the Court finds that it is in the children's best interest for termination to be granted as to [Father], in that the parent has not maintained regular visitation or other contact with the children. The Court finds the lack of visitation is due largely to incarceration, which the Court finds to be the fault of [Father]. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

27. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(F) is not applicable in this matter and does not weigh in favor of, or against, termination. The Court does not find that the children fear [Father].

28. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(G) is not applicable in this matter and does not weigh in

- 11 -

favor of, or against, termination. The Court does not find that conduct by [Father] would exacerbate or trigger the children.

29. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(H) is applicable in this matter. Thus, the Court finds that [] it is in the children's best interest for termination to be granted as to [Father], because the children have created a healthy parental attachment with another person or persons in the absence of the parent. The children are placed together and are bonded with the foster family, including extended members of such family, and the family pets. The Court finds the children [n]ow have a good life. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

30. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(I) is applicable in this matter. Thus, the Court finds that [] it is in the children's best interest for termination to be granted as to [Father], because the children have emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and will not negative impact [sic] the children's access to information about the child's heritage. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

31. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(J) is not applicable in this matter and does not weigh in favor of, or against, termination. The Court finds that the incarceration of [Father] makes drug use and criminal activity virtually impossible, so the Court does not find this factor.

32. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(K) is not applicable in this matter and does not weigh in favor of, or against, termination. The Court is neutral as to this factor. The Court finds that [Father] has adjusted his circumstances by completing some programs while in jail; however, the Court is not sure if the adjustment by [Father] is lasting. The Court finds that [Father] loves his children and he is trying.

33. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(L) is applicable in this matter. Thus, the Court finds that it is in the children's best interest for termination to be granted as to [Father], because the Department has made reasonable efforts to assist the parent in making a lasting adjustment in his conduct or circumstances, but, despite these efforts, the parent has made no change in his conduct or lifestyle. Thus,

the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

34. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(M) is applicable in this matter. Thus, the Court finds that it is in the child's best interest for termination to be granted as to [Father], because the parent has not demonstrated a sense of urgency in seeking custody of the children or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the children's best interest. The Court finds that [Father] did not consider the children when he engaged in drug use and criminal activity. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

35. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(N) is applicable in this matter. Thus, the Court finds that it is in the child's best interest for termination to be granted as to [Father], because the parent and other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the children. The Court finds that [the parents] severely abused the children by exposing them to drugs and environmental neglect. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

36. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(O) is not applicable in this matter and does not weigh in favor of, or against, termination. The Court did not hear proof whether [Father] had ever provided safe and stable care for any children.

37. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(P) is not applicable in this matter and does not weigh in favor of, or against, termination. The Court finds that [Father] knows what the children need, he is just unable to provide for them due to his own behavior.

38. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(Q) is applicable in this matter. Thus, the Court finds that it is in the child's best interest for termination to be granted as to [Father], because the parent has failed to demonstrate the ability and commitment to creating and maintaining a home that meets the children's basic and specific needs and in which the children can thrive. The Court finds [Father] resides in jail; he has not maintained a home for the children. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights[.]

39. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(R) is applicable in this matter. Thus, the Court finds that it is in the child's best interest for termination to be granted as to [Father], because the physical environment of the parent's home is not healthy and safe for the children. The Court finds that this factor favors [termination] based on the history of environmental neglect, severe abuse, and criminal activity. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

40. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(S) is applicable in this matter. Thus, the Court finds that it is in the children's best interest for termination to be granted as to [Father], because the parent has failed to consistently provide more than token financial support for the children. The Court finds that no child support has been paid by [Father]. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.[6]

41. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1)(T) is applicable in this matter. Thus, the Court finds that it is in the children's best interest for termination to be granted as to [Father], because the mental or emotional fitness of the parent would be detrimental to the children and/or prevent the parent from consistently and effectively providing safe and stable care and supervision of the children. The Court finds that this factor favors [termination] based on the history of environmental neglect, severe abuse, and criminal activity. Thus, the Court finds that this factor weighs in favor of terminating [Father's] parental rights.

Father argues that the evidence in this case "falls woefully short of establishing by clear and convincing evidence that it is in the [Children's] best interests to terminate [Father's] parental rights." Specifically, Father argues that he has made an adjustment of circumstance, conduct, and conditions and demonstrated that he has the tools to meet the Children's needs, as evidenced by the programs he completed while in jail; he has a forklift certificate and could get a job upon his release from jail; he has done everything the Department asked him to do; he had a relationship with the Children; there is no evidence that the Children are fearful of him or that returning them to his custody would cause them trauma; he timely established his paternity; there is no evidence that Father cannot provide an appropriate home; and there is no evidence that Father has mental health issues. However, when conducting a best interests analysis, conflicts between the interests of the parent and child are to be resolved "in favor of the rights and best interest of the child." *In re Jacobe M.J.*, 434 S.W.3d at 573 (citing Tenn. Code Ann. § 36-1-101(d)). "Ascertaining

---

[6] In its appellate brief, the Department "does not defend the [trial] court's determination regarding factor S, as no proof was presented at trial regarding Father's payment or nonpayment of child support."

a child's best interests does not call for a rote examination" of statutory factors, and "depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *White*, 171 S.W.3d at 194). The trial court's findings of fact are apt and supported by the record, with the exception of the trial court's finding as to factor S.

Although Father's efforts while in jail to better his position are commendable, the facts remain that the conditions to which he exposed the Children while they were in his custody were "deplorable" and resulted in the Children testing positive for illegal substances. By the time of the termination trial, Father had not shown that he could provide a safe and stable home for the Children.[7] The living conditions Father provided for the Children stand in stark contrast to the Children's foster home, which the record reflects is safe and stable.

The best interests factors militate in favor of terminating Father's parental rights, especially considering that we must view the factors from the Children's, rather than Father's, perspective. Accordingly, we affirm the trial court's conclusion that terminating Father's parental rights is in the Children's best interests.

## CONCLUSION

The judgment of the Juvenile Court for Knox County is affirmed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Matthew H., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

---

[7] This is further supported by the severe abuse order, which reveals that Father "has six other children, and they are all with their mothers."